Thomas Zeilman, WSBA# 28470
tzeilman@qwestoffice.net
LAW OFFICES OF THOMAS ZEILMAN
402 E. Yakima Ave., Suite 710
P.O. Box 34
Yakima, WA  98907
Telephone:  (509) 575-1500
FAX: (509) 575-1227

David F. Askman, CO Bar # 44423
dave@askmanlaw.com
THE ASKMAN LAW FIRM LLC
2533 32nd Ave.
Denver, CO  80211
Telephone:  (720) 855-1533

Attorneys for Plaintiff
Confederated Tribes and Bands of the Yakama Nation

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION,**<br><br>              Plaintiff,<br><br>   v.<br><br>**UNITED STATES OF AMERICA; DEPARTMENT OF THE ARMY; ARMY CORPS OF ENGINEERS,**<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT** |

Plaintiff Confederated Tribes and Bands of the Yakama Nation alleges as follows:

COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT - 1

## NATURE OF THE ACTION

1. This is a civil action for recovery of costs under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607. The Yakama Nation seeks to recover the un-reimbursed costs it has incurred in connection with the historic, ongoing and threatened release of hazardous substances into the environment at, on, and from Bradford Island, which is located at Bonneville Dam in the Columbia River (the "Site").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action, and the defendant, pursuant to 28 U.S.C. § 1331, and Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613.

3. Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose, and the threatened and actual release of hazardous substances occurred and is occurring, within the District of Oregon.

## PARTIES

4. Plaintiff Confederated Tribes and Bands of the Yakama Nation ("Yakama Nation") is a federally recognized Indian tribe and the legal successor in interest to the Indian signatories to the Treaty with the Yakamas of June 9, 1855 (12 Stat. 951) ("Treaty"). Under Article III of the Treaty, the Yakama Nation reserved for itself and its members the right to take fish at all "usual and accustomed places." The nature and scope of the Yakama Nation's off-reservation treaty reserved fishing rights on the Columbia River and its tributaries has been extensively litigated in this Court through participation as an original plaintiff-intervener in the continuing jurisdiction case of *United States v. Oregon* (Civil No. 68-513-KI, D. Or.).

5. Defendants Department of the Army and Army Corps of Engineers ("Defendants") are agencies of the Defendant United States; are the current owners and operators of the Site within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1); and

COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT - 2

owned and operated certain facilities on the Site at the time of disposal of hazardous substances at the Site, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

## STATUTORY FRAMEWORK

6. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in part:

   "(1) the owner and operator of a vessel or a facility,

   (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . .

   (4) . . . shall be liable for –

   (A) all costs of removal or remedial action incurred by . . . an Indian tribe not inconsistent with the national contingency plan . . ."

7. CERCLA Section 101(21) defines "person" to include the United States. 42 U.S.C. § 9601(21).

8. CERCLA Section 120(a)(1) provides that the United States "shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." 42 U.S.C. § 9620(a)(1).

9. CERCLA Section 101(36) defines "Indian tribe" to mean "any Indian tribe, band, nation, or other organized group or community . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 42 U.S.C. § 9601(36).

10. CERCLA Section 101(9) defines "facility" to include "(A) any building, structure, installation, equipment, pipe or pipeline, (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ." 42 U.S.C. § 9601(9).

COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT - 3

11. CERCLA Section 101(24) defines "remedial action" to include "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. . . ." 42 U.S.C. § 9601(24).

## FACTUAL ALLEGATIONS

12. The Bradford Island Site is part of the Bonneville Dam complex, which is located on the Columbia River at River Mile (RM) 146.1, approximately 40 miles east of Portland, Oregon.

13. The Site is within a "usual and accustomed fishing place" of the Yakama Nation under Article III of the Treaty. Enrolled members of the Yakama Nation exercise Treaty reserved rights at their usual and accustomed fishing places on the Columbia River and its tributaries including, but not limited to, fishing sites in the Bonneville Pool near and at the Bradford Island Site. Most of these fishing sites are registered with the Yakama Tribal Government for commercial, ceremonial and subsistence gill-net and platform fishing, and such activity is regulated under tribal laws and regulations.

14. The Yakama Nation is a signatory to the 2008-2017 Management Agreement ("MA"), an order of this Court in *United States v. Oregon* that governs fisheries management in the Columbia Basin. The Court recognizes the Yakama Nation as a co-manager of Columbia Basin fisheries resources along with the States of Oregon and Washington. Under the MA, Zone 6 of the Columbia River between Bonneville Dam and McNary Dam is an exclusive treaty Indian fishing area.

15. Through its Tribal Council, the Yakama Nation has authority and responsibility to protect the health and welfare of its enrolled members. See Yakama General Council Resolution 2/18/44 (1944); Yakama Tribal Council Resolutions T-38-56 (1956), T-10-61 (1960).

16. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

17. The Defendants currently own and operate the Bradford Island Site as part of Bonneville Dam and Lock, including a visitor center, fish ladders, a service center building, an equipment building, and a sandblast building.

18. From approximately 1942 until 1982, the Defendants managed and disposed of waste materials at a landfill in excavated pits or existing depressions at the eastern end of the Site ("landfill"). Waste materials placed in the landfill included household waste, facility-related waste (e.g., grease, light bulbs, sandblast grit), electrical debris, light ballasts, metal debris, metal cables, building materials containing asbestos, burned debris, wood debris, rubber tires, and mercury vapor lamps; pesticides/herbicides were mixed and rinsed from application equipment in this area.

19. Disposal and handling practices by the Defendants at the landfill have impacted the Site's soil and groundwater with petroleum hydrocarbons, polycyclic aromatic hydrocarbons ("PAHs"), metals, polychlorinated biphenyls ("PCBs"), and pesticides/herbicides.

20. Directly north of the landfill, the Defendants disposed of electrical equipment debris directly into the Columbia River. This equipment included light ballasts, electrical insulators, lightning arresters, electrical switches, rocker switches, a breaker box, and electrical capacitors. This disposal resulted in releases of PCBs, PAHs, and various metals into the surrounding river sediment.

21. West of the landfill on the north end of the Site, the Defendants disposed of electrical light bulb debris on a steep slope extending into the Columbia River ("bulb slope"). Materials disposed by the Defendants at the bulb slope included internal and external light bulbs, fluorescent light bulbs, and automobile light bulbs as well as other electrical lighting waste. Disposal at the bulb slope has resulted in releases of lead, mercury, PCBs, and total petroleum hydrocarbons (TPH) to the Site's surface soils. At the base of the bulb slope, much of the contaminated soil has migrated into the Columbia River through wave erosion and slope failure.

22.     From 1958 until 1988, the Defendants used the sandblast building at the Site for sandblasting operations and painting of equipment used at the facility.  Defendants then disposed of the sandblast grit onto open areas surrounding the sandblast building.  The sandblast grit consisted of paint materials that contain metallic (including lead and zinc chromate) and organometallic compounds.  This disposal of spent sandblast grit has resulted in releases of metallic and organometallic constituents into the Site's surface and subsurface soil and potentially into the Columbia River via the storm water drainage system.  Other operations by the Defendants at the sandblast building included electrical transformer disassembly and aboveground storage of hazardous waste materials, which resulted in additional releases of PCBs, metals, pesticides, TPH, PAHs, and volatile organic compounds ("VOCs") to Site soils.

23.     From the 1940s until the 1970s, the Defendants used a pistol range at the Site for small arms target practice.  Soils in the vicinity of the pistol range on the south end of the Site have been impacted with metals associated with this operation.

24.     Beginning in 1997, the Defendants conducted soil, groundwater and sediment investigations at the Site in coordination with the Oregon Department of Environmental Quality ("Oregon DEQ").

25.     Defendants have undertaken response actions at the Site, including, but not limited to, removal actions in the Columbia River in 2002 and 2007, and a draft Remedial Investigation ("RI") report in 2010 and revised RI report in 2012.

26.      Investigations conducted by the Defendants and Oregon DEQ, including the draft RI, have shown that as a result of the Defendants' waste disposal practices, soil, sediments and groundwater are contaminated with "hazardous substances" as that term is defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

27.      Hazardous substances, including PCBs and metals, were found in samples of sediments in the Columbia River at the Site.

28.     Hazardous substances, including PCBs, PAHs, TPH, VOCs, SVOCs, pesticides, and metals, were found in samples of surface and subsurface soils at the Site.

29. Hazardous substances, including PCBs and metals, were found in samples of fish and other aquatic species in the Columbia River at and near the Site.

30. Hazardous substances, including PAHs, TPH, VOCs, SVOCs, butyltins, and metals, were found in samples of groundwater at the Site.

31. There were and are "releases" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), as well as the threat of continuing releases, of hazardous substances into the environment at and from the Site.

32. Releases from the Site have severely impacted the Yakama treaty reserved fisheries resources in the Columbia River. Elevated levels of PCBs have been found in resident fish at the Site. For this reason, state health departments in Washington and Oregon have issued strict warnings not to eat resident fish in the area near the Site, and the Yakama Nation has elected to suspend traditional platform fishing at the Site.

33. Beginning in 2005, the Plaintiff Yakama Nation has participated in response actions at the Site, including oversight of the response actions taken by the Defendants, and has incurred costs thereby. Response actions include meetings and phone conferences between the Defendants and the Yakama Nation Fisheries staff members and Tribal Council officials, as well as correspondence and written comments by Fisheries staff on the Defendants' Site cleanup documents. Plaintiff has repeatedly requested that the Defendants reimburse the Yakama Nation Fisheries Program for its incurred response costs, as well as adequately fund all of its future costs. Failure by the Defendants to reimburse and adequately fund these costs has severely limited the Yakama Nation's ability to properly respond to the hazardous releases at the Site.

## CLAIM FOR RELIEF

**(Claim for Recovery of Costs and Declaratory Judgment for Future Costs)**

34. The allegations in Paragraphs 1 through 33 are incorporated herein by reference.

35. The Defendants are liable parties under Section 107(a)(1) and (2) of CERCLA.

COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT - 7

36. The releases or threatened releases of hazardous substances at the Bradford Island Site have caused the Plaintiff to incur response costs as defined by Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), in connection with the Site.

37. The costs incurred by the Plaintiff in connection with response actions at the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

38. As of September 30, 2014, Plaintiff has incurred response costs for the Site in the amount of $93,125.31.

39. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are liable to the Plaintiff Yakama Nation for the costs incurred by the Plaintiff in connection with response actions at the Site.

40. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the Plaintiff Yakama Nation is entitled to a "declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs."

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff, the Confederated Tribes and Bands of the Yakama Nation, respectfully requests that the Court:

1. Award the Plaintiff a judgment against the Defendants for all costs incurred by the Yakama Nation in connection with the Bradford Island Site, including all costs incurred in this action, plus interest;

2. Pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), enter a declaratory judgment finding the Defendants liable for future response costs incurred by the Plaintiff at the Site;

3. Grant such other and further relief as this Court deems appropriate.

DATED this 9th day of December, 2014.

s/ Thomas Zeilman
THOMAS ZEILMAN    WSBA# 28470
LAW OFFICES OF THOMAS ZEILMAN
402 E. Yakima Ave., Suite 710
P.O. Box 34
Yakima, WA  98907
(509) 575-1500


s/ David Askman
DAVID F. ASKMAN    CO Bar #44423
THE ASKMAN LAW FIRM LLC
2533 West 32nd Avenue
Denver, CO  80211
(720) 855-1533

Attorneys for Plaintiff

COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT - 9